O. WILLIAM VONSEGGERN, APPELLEE, v. WALTER H. WILLMAN ET AL., APPELLEES, AND SABRINA MARIE WILLIAMS, APPELLANT.

508 N.W.2d 261

Filed November 19, 1993.   No. S-91-800.

Siegfried H. Brauer III, of Ross, Schroeder & Brauer, for appellant.

Gwyer Grimminger, John A. Wolf, and Arend R. Baack for appellees O. William VonSeggern, Walter H. Willman, and Overland National Bank.

Hastings, C.J., Boslaugh, White, Caporale, Fahrnbruch, and Lanphier, JJ.

Lanphier, J.

The instant foreclosure action was initiated by the appellee

O. William VonSeggern, who named as defendants all those parties, including the appellant, Sabrina Marie Williams, having a purported interest in certain real estate located in Hall County. Williams' interest resulted from an order in another action granting her a prejudgment attachment on the parcel. That action, also in the district court for Hall County, was a suit for invasion of privacy. The prejudgment attachment was granted on the basis that the defendant in that action sought to transfer property to put it beyond Williams' reach. The district court, in the course of granting VonSeggern's motion for summary judgment in the instant foreclosure action, found that the prejudgment attachment in the other suit was invalid, since it was issued without a bond. The court in the case at bar dismissed Williams' cross-claim to set aside the mortgages in question as fraudulent conveyances. It is from the order granting summary judgment that Williams appeals. We reverse, and remand for further proceedings.

## BACKGROUND

On May 3, 1989, Williams filed a petition alleging that Ronald L. Willman invaded her privacy by photographing her through a two-way mirror when she was nude while tanning in a booth located in his beauty salon. VonSeggern was Ronald Willman's attorney in the invasion of privacy action.

On May 18, 1989, Williams filed an application for attachment, alleging that Ronald Willman was attempting to liquidate, transfer, or otherwise encumber his property holdings for the purpose of placing his financial assets beyond the reach of Williams.

On May 19, 1989, Ronald Willman executed a $20,000 note in favor of VonSeggern and gave VonSeggern a $20,000 mortgage to secure the note. On the same date, Ronald Willman also gave a $40,000 mortgage to Walter H. Willman and a $29,000 mortgage to Overland National Bank of Grand Island.

On June 2, 1989, the court ordered the attachment lien, but no bond was required or paid.

On April 30, 1991, VonSeggern initiated the present foreclosure action. Williams cross-claimed on the basis that the

mortgages were fraudulent conveyances. On June 28, VonSeggern moved for summary judgment against Williams, asserting that her attachment lien was invalid for the reason that no bond was paid pursuant to Neb. Rev. Stat. § 25-1003 (Reissue 1989). On the same date, Overland National Bank made a like motion. On July 1, Walter Willman also filed a motion for summary judgment. On August 14, the court granted summary judgment, finding the attachment lien invalid. Williams' cross-claim was dismissed.

## ASSIGNMENTS OF ERROR

Williams asserts that the district court erred in (1) finding that her attachment was invalid; (2) dismissing her cross-claim for fraudulent conveyance; (3) failing to receive at the summary judgment hearing exhibits 2 through 6, respectively: a statement of financial affairs for Ronald Willman, a note from Ronald Willman to VonSeggern, a mortgage held by VonSeggern, a mortgage held by Walter Willman, and a mortgage held by Overland National Bank; and (4) in overruling her motion to strike allegations in VonSeggern's answer, Overland National Bank's answer, and Walter Willman's answer.

## STANDARD OF REVIEW

When deciding questions of law, this court is obligated to reach conclusions independent of those reached by the trial court. *Bell Abstract & Title v. Caro, Inc.*, 243 Neb. 576, 500 N.W.2d 834 (1993).

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in admissibility of evidence. *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993); *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991).

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Ev. Luth.*

*Soc. v. Buffalo Cty. Bd. of Equal.*, 243 Neb. 351, 500 N.W.2d 520 (1993).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Gould v. Orr, ante* p. 163, 506 N.W.2d 349 (1993).

## PREJUDGMENT ATTACHMENT

### NECESSITY OF BOND

Williams argues that the trial court erred in finding her prejudgment attachment invalid. She asserts that the lack of a bond is not fatal to her attachment.

However, this court has held that a bond is a statutory requirement. In *Vanburg v. Mauel,* 131 Neb. 685, 686-87, 269 N.W. 626 (1936), we said:

> Except where the ground of attachment is that the defendant is a foreign corporation or a nonresident of the state, no order of attachment shall be issued until an undertaking is filed and approved with one or more sufficient sureties to the effect that plaintiff will pay defendant all damages resulting from a wrongful attachment.

It is widely accepted that jurisdiction over attachment proceedings cannot be legitimately exercised unless the attaching creditor pursues substantially the essential statutory requirements. See, *Ledgebrook Condominium Assn., Inc. v. Lusk Corporation,* 172 Conn. 577, 376 A.2d 60 (1977); *Fletcher & Son v. Gordon,* 219 Iowa 661, 259 N.W. 204 (1935); *Jenkins v. First Nat. Bank et al.,* 73 Mont. 110, 236 P. 1085 (1925); *Winfree v. Mann,* 154 Va. 683, 153 S.E. 837 (1930). That is, the courts have no authority to attach property but that which has been granted them by statute. See, *Bain & Sons v. Mitchell,* 82 Ala. 304, 2 So. 706 (1887); *Stowe v. Matson,* 94 Cal. App. 2d 678, 211 P.2d 591 (1949); *Ledgebrook Condominium Assn., Inc. v. Lusk Corporation, supra; Stalvey v. Varn Motors Finance Co.,* 56 Ga. App. 696, 193 S.E. 627 (1937); *Fletcher &*

*Son v. Gordon, supra; Killen v. American Casualty,* 231 Md. 105, 189 A.2d 103 (1963); *Trinidad Asphalt Mfg. Co. v. Standard Oil Co.,* 214 Mo. App. 115, 258 S.W. 64 (1924); *Edwards v. Stein,* 94 N.J. Eq. 251, 119 A. 504 (1923). Since in our statutory scheme no attachment shall be issued without a bond, the requirement of a bond is jurisdictional. See *Vanburg v. Mauel, supra.* See, also, *Martin v. Schillo,* 389 Ill. 607, 60 N.E.2d 392 (1945), *cert. denied* 325 U.S. 880, 65 S. Ct. 1572, 89 L. Ed. 1996; *Edwards v. Stein, supra.* An attachment issued without proper statutory authority is void ab initio. *Stowe v. Matson, supra; Lunger v. Page,* 16 N.J. Misc. 529, 2 A.2d 606 (1938).

The trial court, therefore, properly determined that this attachment, issued without a bond, a statutory requirement, was invalid.

### PLAINTIFF'S DUTY

Williams next contends that the lack of a bond was the trial court's error and that she should not be penalized for the court's error. She contends that the language of § 25-1003 establishes requirements for the presiding judge, but not for the plaintiff. Although the language of § 25-1003 is directed toward the presiding judge, in *Insurance Co. of North America v. Maxim's of Nebraska,* 178 Neb. 274, 276, 132 N.W.2d 885, 887 (1965), we stated:

> Section 25-1003, R. R. S. 1943, after excepting foreign corporations and nonresidents of the state specifically provides that, "In all other cases, the order of attachment shall not be issued by the clerk . . ." until a bond has been filed as provided therein. We think that it was the legislative intent, when the statute required the plaintiff to comply with the provisions of the general statute on attachment as to necessary allegations, that it must have therefore also intended that it [the plaintiff] comply with the bond provisions of section 25-1003, R. R. S. 1943. These statutes are a part of a comprehensive act. This interpretation harmonizes the meaning of the statutes, gives consistency to them, and achieves the clear legislative purpose of consistent protection for all of the defendant's

property from wrongful attachment.

Complying with the statutory requirements, therefore, was Williams' obligation.

### COLLATERAL CONTESTS

Williams next contends that even if the attachment was invalid, the other parties should not have been allowed to contest its validity. Williams asserts that since Ronald Willman did not object to the lack of a bond at the attachment hearing, he was estopped from later raising that issue. With regard to VonSeggern, Overland National Bank, and Walter Willman, Williams argues that they lack standing to contest the validity of the attachment.

Since, as established above, the lack of a bond is a jurisdictional defect, we are confronted with the issue of when a jurisdictional defect in a prejudgment attachment can be raised, and by whom.

A judgment entered by a court which lacks subject matter jurisdiction is void. *Marshall v. Marshall*, 240 Neb. 322, 482 N.W.2d 1 (1992). Also, it is the longstanding rule in Nebraska that such a void judgment may be attacked at any time in any proceeding. *Id.*; *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988); *Lammers Land & Cattle Co. v. Hans*, 213 Neb. 243, 328 N.W.2d 759 (1983). It may be impeached in any action, direct or collateral. *Marshall v. Marshall, supra*; *Stanton v. Stanton*, 146 Neb. 71, 18 N.W.2d 654 (1945); *Hassett v. Durbin*, 132 Neb. 315, 271 N.W. 867 (1937). See, also, *Shade v. Kirk*, 227 Neb. 775, 420 N.W.2d 284 (1988). That is because a void judgment is in reality no judgment at all. *Marshall v. Marshall, supra*. The collateral attack in this action was proper.

The court, therefore, also properly refused to strike those portions of VonSeggern's, Overland National Bank's, and Walter Willman's answers which raised the invalidity of Williams' attachment.

### ADMISSIBILITY OF EXHIBITS

Williams argues that the trial court erred in sustaining an objection to and in declining to receive her offered exhibits 2 through 6, respectively: a statement of financial affairs for Ronald Willman filed in the U.S. Bankruptcy Court for the

District of Colorado, a note from Ronald Willman to VonSeggern, a mortgage held by VonSeggern, a mortgage held by Walter Willman, and a mortgage held by Overland National Bank. The record reveals that when exhibits 2 through 6 were offered, opposing counsel objected on grounds of relevance. The following then transpired regarding exhibits 3 through 6:

> THE COURT: Well, of course they're in the file, the court would take notice of them anyway. I don't know what you're going to offer them as exhibits for.
>
> [Appellant's counsel]: I just want the court to be aware of where they're at and what they are.
>
> THE COURT: The court is already aware of them.

Given that exhibits 3 through 6 were already contained in the court file as part of the pleadings, these exhibits were properly excluded.

Opposing counsel repeated the objection on grounds of relevance to exhibit 2, Ronald Willman's bankruptcy filing. In her brief, Williams concedes that exhibit 2 does not directly address the issues raised in the motions for summary judgment. Williams suggests that exhibit 2 is relevant in that it explains why Ronald Willman never objected to the lack of a bond. However, since the lack of a bond is a jurisdictional defect, which can be raised at any time, Ronald Willman's failure to object is irrelevant. (See preceding discussion entitled "Collateral Contests.") Thus, exhibit 2 was properly excluded.

## SUMMARY JUDGMENT

Finally, Williams contends that the court erred in granting summary judgment on her cross-claim. She claims there were genuine issues of material fact yet to be addressed.

A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must furnish sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party.

*Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 243 Neb. 351, 500 N.W.2d 520 (1993).

The only evidence offered by the moving parties was exhibit 1, which contained copies of some of the pleadings from Williams' underlying invasion of privacy action against Ronald Willman. If anything, these pleadings tend to establish that there are genuine issues of material fact relevant to Williams' fraudulent conveyance claim. Moreover, the court took notice of a note from Ronald Willman to VonSeggern, a mortgage held by VonSeggern, a mortgage held by Walter Willman, and a mortgage held by Overland National Bank, all dated after notice of the application for attachment had been delivered and before the order of attachment was signed.

The parties moving for summary judgment against the cross-claim that the mortgages were fraudulent conveyances did not furnish any evidence to demonstrate that they were entitled to judgment as a matter of law. They merely established that the prejudgment attachment was invalid. The lack of a prejudgment attachment, alone, is not enough to resolve all the issues of fact involved in Williams' cross-claim. Even without the prejudgment attachment, Williams is still a creditor under the Uniform Fraudulent Transfer Act, Neb. Rev. Stat. § 36-701 et seq. (Cum. Supp. 1992). She is therefore in a position to claim that the conveyances that Ronald Willman made were fraudulent as to her. The moving parties did not carry their burden of establishing that they were entitled to judgment as a matter of law on Williams' cross-claim. The court therefore erred in granting summary judgment on such cross-claim.

We therefore reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

SHANAHAN, J., not participating.